1
2
3                    UNITED STATES DISTRICT COURT
4                   NORTHERN DISTRICT OF CALIFORNIA
5
6   MARK KANE,                          Case No. 22-cv-04583-WHO
7            Plaintiff,
                                        **ORDER GRANTING MOTION TO**
8      v.                               **DISMISS**
9   MATSON NAVIGATION COMPANY,          Re: Dkt. No. 20
    INC., et al.,
10            Defendants.
11
12          Defendants Matson Navigation Company, Inc. ("Matson") and Theodore Bernhard move

13  to dismiss a First Amended Complaint ("FAC") arising from plaintiff Mark Kane's termination

14  from his job aboard a ship that Matson owned and Bernhard captained, because Kane's claims are

15  preempted by section 301 of the Labor Management Relations Act ("LMRA").  Kane's breach of

16  contract, breach of the implied covenant of good faith and fair dealing, and intentional interference

17  with economic relations claims appear to be preempted as pleaded, but it is not entirely clear

18  whether Kane bases these claims on the collective bargaining agreement ("CBA") between

19  Matson and his union, the shipping articles outlining the dates of his employment, or something

20  else.  As pleaded, the claims either arise directly from an alleged violation of the CBA or require

21  interpretation of it.  But I will give Kane the opportunity to amend in case additional allegations

22  about the contract at issue can avoid preemption.  His defamation and intentional infliction of

23  emotional distress ("IIED") claims do not require interpretation of the CBA and are not

24  preempted, at least as pleaded.  Kane's claim for retaliation asserted under California's Fair

25  Employment Housing Act ("FEHA") is DISMISSED with prejudice against Bernhard: non-

26  employer individuals cannot be held liable for such claims.

27                                    **BACKGROUND**

28          Kane, a seaman and member of the Sailors' Union of the Pacific ("SUP"), was hired to

work aboard the vessel M/V Kaimana Hila in September 2021. FAC [Dkt. No. 18] ¶ 8. Matson owned and operated the vessel, of which Bernhard was the master. *Id*. ¶¶ 6-7. Kane's shipping articles provided work for 90 days, plus 15 days to return to Long Beach, California, for a total of 105 days from September 13, 2021, to December 26, 2021. *Id*. ¶ 10. He signed onto the ship in Los Angeles County on September 13. *Id*. ¶ 8.

According to Kane, he completed all of his work "as a prudent and competent merchant seaman." *Id*. ¶ 11. But, he alleges, on December 6, 2021, Bernhard submitted a letter warning Kane that he had violated workplace policy. *Id*. Kane contends that this letter came in retaliation for his reporting that another sailor harassed and bullied him. *See id*. According to Kane, Bernhard read the letter to him in front of four shipmates, an experience that he described as "being dressed down" and "demoralizing and discriminatory." *Id*. ¶ 13. Bernhard then confined Kane to his quarters, told him not to try to work, and said he would handcuff Kane if he left. *Id*. ¶ 15.

The next day, "[w]ithout the opportunity to correct any alleged deficiencies," Bernhard issued another letter terminating Kane. *Id*. ¶ 16.[1] Bernhard then "forcefully discharged" Kane from the ship in Guam. *Id*. ¶ 19. Matson also placed Kane on its "do not hire list" for two years. *Id*. ¶ 22.

The same day, December 7, Kane consulted with SUP and "they informed [him] that they

---

[1] A court generally may not consider "any material beyond the pleadings" when deciding a Rule 12(b)(6) motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Otherwise, the motion is converted into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Courts may, however, consider "documents incorporated into the complaint by reference" without so converting the motion. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Although mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint." *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018) (citation and quotation marks omitted).

Kane attaches various exhibits to the FAC, as do the defendants to their motion to dismiss. *See* FAC, Exs. A-E; Mot. to Dismiss ("MTD") [Dkt. No. 20-1], Defanti Decl., Exs. A-B. I will consider three of those documents in deciding this motion, as they are incorporated into the complaint by reference: the December 6, 2021,warning letter; the December 7, 2021, termination letter; and the CBA. *See* FAC, Exs. A-B; MTD, Defanti Decl., Ex. A. The FAC describes the contents of these documents, which are integral to Kane's claims and thus, the complaint.

would pursue and exhaust [his] remedies." *Id.* ¶ 21.  But on December 30, 2021, the president and secretary-treasurer of SUP sent Kane a letter declining to pursue his grievance and noting that the prohibition on future employment was not permanent.  *Id*. ¶ 24.

Kane filed this suit on August 8, 2022.  *See* Dkt. No. 1.  After the defendants moved to dismiss, Kane filed the FAC, which alleges six causes of action: retaliation, breach of employment contract, breach of good faith and fair dealing, intentional interference with economic relations, defamation, and intentional infliction of emotional distress.  FAC ¶¶ 31-80; *see also* Dkt. Nos. 9, 18.  The defendants again moved to dismiss the complaint.  Dkt. No. 20.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts his allegations as true and draws all reasonable inferences in his favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

# DISCUSSION

## I.    SECTION 301 PREEMPTION

Section 301 of the LMRA provides that

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  The Supreme Court has held that section 301 "not only provides federal court jurisdiction over controversies involving collective bargaining agreements, but also authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (citation and quotation marks omitted).

When a state law claim "arises entirely from or requires construction of a CBA," section 301 preempts the claim.  *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 914 (9th Cir. 2018) (citing cases).  The Ninth Circuit established a two-part inquiry to determine whether a claim is so preempted.  *Id*. at 920.  First, the court must "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself."  *Id*. at 920-21 (citation omitted).  "If a claim arises entirely from a right or duty of the CBA—for example, a claim for violation of the labor agreement, whether sounding in contract or tort—it is, in effect, a CBA dispute in state law garb, and is preempted."  *Id*. at 921 (citations omitted).  However, "claims are not simply CBA disputes by another name" and are not preempted under the first step, "if they just refer to a CBA-defined right; rely in part on a CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a defense."  *Id*. (citing cases).

If a right is not grounded in a CBA at the first step, the court then asks "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration."  *Id*. (citing cases).  "Interpretation" of a CBA is narrowly construed and "means something more than 'consider,' 'refer to,' or 'apply.'"  *Id*. (citation omitted).  Instead, "claims are only preempted to the extent

United States District Court
Northern District of California

1    there is an active dispute over the meaning of contract terms." *Id*. (citation and quotation marks

2    omitted). "Accordingly, a state law claim may avoid preemption if it does not raise questions

3    about the scope, meaning, or application of the CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146,

4    1153 (9th Cir. 2019) (citation omitted).

5          The defendants' motion to dismiss relies on section 301 of the LMRA and its applicability

6    to Kane's claims. *See* MTD at 7:6-8:23. They contend that section 301 preempts all but Kane's

7    retaliation claim, as the remainder arise from or otherwise require analysis of the CBA between

8    Matson and SUP. *See id*.

9                      **A.  Breach of Contract**

10         Turning first to Kane's allegations of breach of contract, the defendants argue that section

11   301 preempts the claim because it is "based on the underlying allegations that his treatment and

12   termination were violations of the CBA," pointing to the FAC's assertion that "the grievance

13   procedure established in the above-mentioned collective bargaining agreement assured [Kane] that

14   defendant Matson would not arbitrarily terminate him." *Id*. at 17:1-6 (citing FAC ¶ 44).

15         Kane's response is twofold. First, he argues that this claim is not based on the CBA's

16   terms and conditions, but on California Labor Code section 2924, which states:

17             An employment for a specified term may be terminated at any time by the
18             employer in case of any willful breach of duty by the employee in the course of his
               employment, or in case of his habitual neglect of his duty or continued incapacity
19             to perform it.

20   *See* Oppo. [Dkt. No. 22] 14:2-18; Cal. Lab. Code § 2924. This, he contends, does not require me

21   to interpret the CBA, as the rights afforded under section 2924 "are not substantially dependent"

22   on the CBA's terms. *See* Oppo. at 12:12-16, 14:2-18. Second, he argues that the "grievance

23   procedure in the collective bargaining agreement is not at issue" because he does not challenge its

24   legality. *Id*. at 12:17-18. According to Kane, all I need to do is "look to the CBA to facially

25   acknowledge that the grievance procedure exists." *Id*. at 14:13-14.

26         It is not entirely clear from the FAC upon which contract Kane bases his claim. The FAC

27   alleges that Kane and Matson "were parties to an employment contract for a specified time" and

28   that "[b]ased on the written contract, plaintiff had an employment contract with defendant Matson

that it would employ him for the specified time." FAC ¶¶ 44-45. This could be the CBA, but it could also be the shipping articles that Kane briefly references in the FAC, which "entitled him to work for . . . a total of 105 days, from September 13, 2021, until December 26, 2021." *Id.* ¶ 10. Then again, the breach of contract claim expressly references the CBA, alleging that "the grievance procedure established in the above-mentioned collective bargaining agreement assured plaintiff that defendant Matson would not arbitrarily terminate him." *Id.* ¶ 44.

It appears that Kane alleges the relevant breach in Paragraph 47, which states:

> Notwithstanding the express promise not to terminate the employment contract but for willful breach of duty or habitual neglect, on December 7, 2021, defendant Matson terminated plaintiff's employment on defendant Bernhard's representations of alleged violations of workplace policy, even though there is no history or record of such violations.

*Id.* ¶ 47. But Kane does not plead that his shipping articles contained this promise, and the CBA itself does not appear to discuss a "willful breach of duty" or "habitual neglect." *See id.* ¶ 10; *see generally* Defanti Decl., Ex. A ("CBA"). Instead, it appears that this language comes from the California labor law that Kane invokes, section 2924. *See* Cal. Lab. Code § 2924.

Based on a holistic reading of the FAC, it appears that the CBA is the contract at issue. The FAC expressly mentions the shipping articles only once. *See generally* FAC. Meanwhile, it repeatedly references the CBA, alleging in part that Kane's treatment "was not in compliance with . . . the collective bargaining agreement," that Matson "violated . . . its own collective bargaining agreement with the SUP by wrongfully terminating" Kane, and that Kane is "entitled to back wages under the terms of the collective bargaining agreement." *Id.* ¶¶ 18, 20, 30. If the contract purportedly breached was the CBA, then section 301 clearly preempts the claim at step one of the analysis. *See Alaska Airlines*, 898 F.3d at 921 ("If a claim arises entirely from a right or duty of the CBA—*for example, a claim for violation of the labor agreement*, whether sounding in contract or tort—it is, in effect, a CBA dispute in state law garb, and is preempted.") (emphasis added).

Even if Kane's breach of contract claim is based on the shipping articles, analyzing the claim requires an interpretation of the CBA. Section 2924 contemplates the termination of an employee if he willfully breaches a duty in the course of his employment, habitually neglects his

United States District Court
Northern District of California

1    duty, or is continually incapable of performing it.  *See* Cal. Lab. Code § 2924.  This necessarily

2    raises the question of what Kane's duties were—which are covered by the CBA.  The CBA

3    provides that "[t]he duties of sailors shall include the recognized and customary duties of the deck

4    department of a vessel," and then lists what those duties include.  *See* CBA at 34.

5         To determine what Kane's "recognized and customary duties" were and whether he

6    adequately performed them requires more than considering, referring to, or applying the CBA.

7    *See Alaska Airlines*, 898 F.3d at 921.  If the question merely involved looking at the list of

8    enumerated duties to see if Kane performed them, then the claim may not be preempted.  But the

9    list is non-exhaustive.  *See* CBA at 34 ("shall *include* the following duties").  And the phrase

10   "recognized and customary" requires more digging in order to interpret its meaning.  The nature of

11   Kane's duties, as provided in the CBA, directly implicates whether Matson breached the contract,

12   as Kane apparently premises his breach of contract claim on section 2924.

13        Whether the contract at issue is the CBA or the shipping articles, Kane's claim is

14   preempted by section 301.  If he alleges a breach of the CBA, the claim is preempted at the first

15   step of the Ninth Circuit's inquiry, as Kane seeks to vindicate a right or duty created by the CBA

16   itself.  *See Alaska Airlines*, 898 F.3d at 921.  And if he alleges a breach of the shipping articles,

17   and relies on section 2924 as he argues, then I must interpret the CBA to determine what his duties

18   were, meaning his claim is preempted at the second step.  *See id*.

19        The breach of contract claim is DISMISSED.  I am not convinced that Kane will be able to

20   cure this issue with amendment.  However, because the FAC is ambiguous concerning the details

21   of the shipping articles, he may be able to allege additional facts that avoid preemption.  I will

22   therefore grant him leave to amend.

### B.  Breach of Good Faith and Fair Dealing

24        Whether section 301 preempts Kane's breach of good faith and fair dealing claim is a far

25   more straightforward question.  The FAC expressly alleges that Kane "performed all the duties

26   and conditions of the employment agreement, as detailed in the collective bargaining agreement"

27   and that Matson breached the covenant by "violating and failing to follow its obligations for due

28   process in the grievance procedure agreed to in the collective bargaining agreement before taking

action against plaintiff." FAC ¶¶ 51, 54. The claim therefore either seeks to "vindicate a right or duty created by the CBA itself" (if the covenant is implied in the CBA itself) or requires interpretation of it (to determine Kane's and Matson's respective duties under the CBA). *See Alaska Airlines*, 898 F.3d at 921. Either way, the claim is preempted by section 301. It too is DISMISSED with leave to amend, for the same reasons articulated above.

### C. Intentional Interference with Economic Relations

Under California law, the elements of an intentional inference with economic relations claim are: "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of that relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Mandel v. Hafermann*, 503 F. Supp. 3d 946, 979 (N.D. Cal. 2020) (citation omitted).

Kane alleges that Bernhard "knew of the above-described employment contract existing between" Kane and Matson and falsely represented in the warning and termination letters that Kane had violated workplace policy "to induce defendant Matson to breach its contract and sever its employment relationship with plaintiff." FAC ¶¶ 58-59. Kane further alleges that as a result of Bernhard's conduct and Matson's "breach of the employment contract," he lost past wages, future earnings, and other employment benefits. *Id.* ¶ 60.

As alleged, Kane's interference claim hinges on the breach of contract between him and Matson. It is again unclear exactly which contract is at issue—the CBA or the shipping articles— but either requires an interpretation of the CBA to determine if any breach occurred, as I have explained. Kane's interference claim is therefore preempted for the same reasons as his breach of contract claim. It too is DISMISSED with leave to amend.

### D. Defamation

The Ninth Circuit has found that defamation claims are preempted by section 301 when they are "based on facts inextricably intertwined with the grievance machinery of the collective bargaining agreement." *See Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. Cal.*, 827

United States District Court
Northern District of California

F.2d 589, 594 (9th Cir. 1987).  The case law draws a line between allegedly defamatory statements made in the context of a grievance procedure provided for within a CBA (which are preempted) and those that are not (which are not).  *See, e.g., Tellez v. Pac. Gas & Elec. Co., Inc.*, 817 F.2d 536, 538 (9th Cir. 1987) (holding that a defamation claim was not preempted because the purportedly defamatory letter did not implicate the CBA, which "neither require[d] management to send written notice of suspension nor provide[d] guidelines in the event such notice [was] sent"); *Jackson v. S. Cal. Gas. Co.*, 881 F.2d 638, 645 (9th Cir. 1989) (holding that a defamation claim was not preempted because the allegedly defamatory accusations did not appear to have been made "pursuant to any requirements of the disciplinary procedures" outlined in the CBA); *but see Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1063 (9th Cir. 1989) (holding that any defamation claim based on discharge notices were preempted because the CBA at issue "require[d] employers to notify employees of intended disciplinary action in writing, and simultaneously to notify their union"); *Scott*, 827 F.2d at 594 (holding that a defamation claim was preempted because the allegedly defamatory remarks were made in the course of a counseling session, prearbitration meetings, and investigative hearings—"the grievance procedure provided by the contract").  This distinction makes sense, as a defamation claim can arise under state law without asserting any rights deriving from a CBA or requiring the interpretation of its terms.  *See Tellez*, 817 F.2d at 538.  As the Ninth Circuit succinctly stated in *Tellez*: "California's defamation law establishes nonnegotiable rights and obligations independent of any labor contract.  One can sue for defamation regardless of employment status or union membership."  *Id.*

Kane alleges that the warning and termination letters that Bernhard published were defamatory because they "falsely allege repeated violations of workplace policies" and "falsely and injuriously characterize [Kane] as ignoring safety precautions, being unwilling to cooperate, and having a negative impact on the crew by using vulgar language, taking a harassing or aggressive tone, and bullying others."  FAC ¶ 67.  The defendants argue that Kane's defamation claim is preempted because the "alleged defamatory statements expressly relate to the grievance procedure for discharges governed by the CBA," and thus is inextricably intertwined with the agreement.  MTD at 20:10-12.  According to the defendants, whether the alleged accusations

9

1    against Kane were a valid basis for his termination and whether Matson properly barred him from

2    employment "necessarily requires interpretation of the CBA." *Id*. at 20:22-24.

3          In response, Kane argues that the defamatory statements in the letters were extrinsic to the

4    CBA, and that they were not part of a grievance procedure, an initial incident report, or subsequent

5    investigation.  Oppo. at 18:20-28.  And, he notes, SUP declined to pursue a grievance on his

6    behalf.  *Id.*; *see also* FAC ¶ 24.  Therefore, Kane contends, his defamation claim is not

7    inextricably intertwined with the CBA and is not preempted.  Oppo. at 18:28-19:2.

8          Kane has the better argument, at least at the pleadings stage.  The defendants argue that the

9    letters "were generated as part of the disciplinary and investigative process," but do not point to

10   any specific provisions of the CBA requiring the issuance of such letters.[2]  *See* Reply [Dkt. No.

11   23] 10:11-13.  They then offer a somewhat-contradictory argument that "to know whether the

12   CBA explicitly or implicitly required that action requires interpretation of the CBA."  *Id*. at 11:14-

13   15.  But the Ninth Circuit has instructed that interpretation is "construed narrowly," and "means

14   something more than 'consider,' 'refer to,' or 'apply.'"  *See Alaska Airlines*, 898 F.3d at 921

15   (citation omitted).  Mere reference to the CBA supports Kane's argument that the letters did not

16   arise in any grievance procedure.  The letters do not appear to have been issued pursuant to any

17   requirements of the disciplinary process; indeed, the CBA does not mention letters in any

18   disciplinary context.  *See generally* CBA.  Similar to *Tellez*, there are no provisions that require

19   management to send sailors written notices of warning or termination, or that provide guidance if

20   any notices are sent.  *See generally id.*; *see also Tellez*, 817 F.2d at 538.  I see nothing that requires

21   Matson to "notify employees of intended disciplinary action in writing."  *See Shane*, 868 F.2d at

22   1063.

23          Moreover, there are no allegations in the FAC that support a finding that the letters arose

24   from "the grievance machinery of the collective bargaining agreement."  *See Scott*, 827 F.2d at

25   _____

26   [2] Later, the defendants point to section 2(b) of the CBA's "Matson Work Rules," which states that
     "[w]hen the employer rejects men furnished who are considered unsuitable and unsatisfactory, the
27   employer shall furnish a statement in writing to the Union stating the reason for the rejection."
     Reply at 11:4-11 (citing CBA at 34].  But Kane does not allege that the letters arose in this
28   context, as the FAC does not allege that either letter was provided to his union and instead issued
     to him.  *See* FAC ¶¶ 11, 16.

United States District Court
Northern District of California

594.  The grievance procedure set forth in the CBA contemplates the settlement of "all grievances and disputes" first through discussion between union delegates and vessel department heads, then union and company representatives, the Joint Labor Relations Committee, and/or an arbitrator— discussions that are not alleged here.  *See* CBA at 7-8; *see generally* FAC.  If a dispute or grievance is not settled at this first step, it "shall be reduced to writing by the moving party, shall be submitted in writing to the opposite party's designated representative, and shall be jointly investigated and discussed."  *See* CBA at 8.  This is the closest reference to written notice that I can find in the CBA.  But the FAC does not allege that the letters were issued in this context; instead, it alleges that Bernhard read the letter aloud to Kane in front of four of his shipmates.  *See* FAC ¶ 13.  Moreover, Kane never alleges that he instituted a formal grievance process.  *See generally id*.  Instead, the FAC alleges that SUP decline to pursue any grievance on his behalf.  *Id.* ¶¶ 24-25.  The fact that neither letter cites the grievance procedure set forth in the CBA—or any provision of the CBA, for that matter—supports a finding that the allegedly defamatory statements were made outside of that procedure.  *See id*., Exs. A, B.

The defendants make much of one sentence in Kane's defamation claim, which alleges that Bernhard "willfully and consciously disregarded the rights of plaintiff under the law, including California Labor Code section 2924, and the collective bargaining agreement."  *See* MTD at 20:5-12 (citing FAC ¶ 72).  But this conclusory statement, without more, is not enough to bring the entirety of the defamation claim within section 301's ambit.  Neither is the defendants' argument that the CBA "implicitly requires good cause for termination."  Reply at 10:15-17 (citing CBA at 9) ("In the event the discharge or rejection is found to be unjustified, the employee concerned shall be reinstated promptly.")).  Kane's defamation claim does not depend on whether his termination was justified; instead, the focus is on whether the statements by Bernhard were published, false, defamatory, unprivileged, and injurious.  *See John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1312 (2016) ("The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.") (citation omitted).

Accepting Kane's allegations in the FAC as true and drawing all reasonable inferences in

1    his favor, he has not alleged that the letters were issued as part of the grievance procedure set forth

2    in the CBA.  His claim is therefore not inextricably intertwined with the CBA and not preempted

3    under section 301.  The motion to dismiss the claim on these grounds is DENIED.[3]

### E.  Intentional Infliction of Emotional Distress

5        The Ninth Circuit has stated that IIED claims are preempted by section 301 if they require

6    "examination or interpretation" of a CBA.  *See Tellez*, 817 F.2d at 539; *see also Cook v. Lindsay*

7    *Olive Growers*, 911 F.2d 233, 239 (9th Cir. 1990) ("If the CBA does not govern the offending

8    behavior, section 301 does not preempt [the plaintiff's] emotional distress claim.").

9        Similar to the defamation claim, the defendants argue that Kane's IIED claim is preempted

10   by section 301 because "it is premised on wrongful discharge and purported violations subject to

11   the grievance procedure established by the CBA," specifically Bernhard's public reading of the

12   letters and confinement of Kane to his quarters until placed ashore in Guam.  *See* MTD at 21:15-

13   26 (citing in part FAC ¶ 75).

14       In response, Kane again points to the CBA's silence with regard to "the possible grounds

15   for discharge"; "letters of warning or termination"; and "post-termination employment

16   embargoes."  Oppo. at 19:23-20:1.  He argues that the IIED claim does not allege "improper

17   administration of discipline under the collective bargaining agreement because the collective

18   bargaining agreement does not set standards for the administration of discipline" and that "there is

19   nothing for the court to interpret" in the CBA "regarding the cause or grounds for plaintiff's

20   termination regarding his emotional distress claim."  *Id*. at 20:2-7.

21       The FAC alleges a laundry list of actions by Bernhard underlying the IIED claim,

22   including: his reading of the warning and termination letters; his refusal to allow Kane to discuss

23   the allegations against him or remedy them; and his confinement of Kane to his quarters, with

24   threats of being handcuffed if he left.  *See* FAC ¶ 75.  Kane further alleges that he was barred from

25   employment by Matson for two years.  *See id*.  Although Kane "denies the trumped-up allegations

---

[3] The defendants focused their motion on section 301's applicability to Kane's claims, and did not otherwise challenged their sufficiency.  *See generally* MTD.  I have not had the opportunity to assess whether Kane plausibly pleaded a defamation claim, as that question was not before me.

United States District Court
Northern District of California

1   made against him," he does not allege, for the purposes of the IIED claim, that he was wrongfully

2   terminated. *See id*.

3          This case is therefore distinguishable from *Cook*, on which the defendants rely in support,

4   because the basis of that emotional distress claim was whether the plaintiff was wrongfully

5   discharged. *See* MTD at 21:2-26; *see also Cook*, 911 F.2d at 239. Moreover, although the CBA

6   in *Cook* did not have "a detailed section on discharge and the possible grounds therefor," it did

7   "indicate that discharge will be for cause" and provided a "detailed grievance procedure, which

8   [the plaintiff] followed." *See* 911 F.2d at 239. Similarly, in *Shane*—upon which the defendants

9   also rely—the court held that an IIED claim was preempted by section 301 because it essentially

10  alleged "that administration of discipline was improper under the standards set by the collective

11  bargaining agreement." *See* 868 F.2d at 1063 (citation omitted).

12         Although the CBA at issue includes a grievance procedure, Kane does not allege that he

13  followed it. *See generally* FAC. And although the grievance procedure covers "[d]isputes relating

14  to the discharge or rejection of unlicensed seaman," it does not outline any possible grounds for

15  discharge or discipline. *See* CBA at 9. The CBA is instead more similar to that in *Tellez*, which

16  was "vague on disciplinary formalities" and "neither requires nor regulates suspension letters."

17  *See* 817 F.2d at 539. Just as the Ninth Circuit held that "examination or interpretation of the

18  agreement would not help to resolve Tellez's claim," interpreting this CBA does not answer the

19  question of whether Bernhard's actions support an IIED claim. *See id*.

20         There is one caveat to this. Kane alleges that he was "confined to his quarters until placed

21  ashore in violation of the collective bargaining agreement and general maritime law." *See* FAC ¶

22  75. Although it is unclear whether Kane alleges that the confinement violates the CBA, or the

23  placing ashore, or both, to the extent that Kane's IIED claim relies on a violation of the CBA, that

24  portion of the claim would be preempted by section 301, as it arises from a right or duty of the

25  CBA. *See Alaska Airlines*, 898 F.3d at 921. Otherwise, the IIED claim is not preempted by

26  section 301 and may proceed. That said, as with the defamation claim, the defendants did not

27  challenge this claim on anything but section 301 grounds. Whether Kane adequately alleged an

28  IIED claim was not raised on this motion to dismiss.

United States District Court
Northern District of California

## II.      REMAINING SECTION 301 ARGUMENTS

The defendants make two other primary arguments against Kane's claims, both of which also rely on section 301.  First, they argue that Kane's claims are time-barred by section 301's six-month statute of limitations.  MTD at 22:1-23:18.  Second, they contend that the breaches of contract and good faith and fair dealing claims cannot proceed against Bernhard because an individual cannot be sued under section 301.  *Id*. at 24:9-19.  Although Kane responds to the statute of limitations argument, he does not address individual liability under section 301, nor do the defendants return to this argument in their reply.  *See generally* Oppo.; *see generally* Reply.

When courts find that resolution of a state law claim depends on the interpretation of a CBA, "that claim must either be treated as a section 301 claim or dismissed as pre-empted by federal labor-contract law."  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985); *see also Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir. 2016) (quoting the same).  Rather than treat Kane's claims as section 301 claims, I will dismiss them as preempted.  Because I am granting Kane leave to amend, I find that it would be premature to decide these remaining issues now.  Kane may be able to amend his complaint to allege additional facts or a new legal basis for his breach of contract claim that avoids preemption.  The same is true for the other two claims.  Any further analysis under section 301 is not needed at this point.

## III.     RETALIATION

Finally, the defendants contend that Kane's first claim, retaliation, fails as a matter of law against Bernhard, both because an individual cannot be sued for retaliation under FEHA and because Kane failed to exhaust his administrative remedies with respect to Bernhard.  MTD at 24:20-25:2.  The California Supreme Court has held that although an employer may be held liable for a retaliation claim brought under FEHA, "nonemployer individuals are not personally liable for their role in that retaliation."  *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1173 (2008); *see also id*. at 1160 ("The employer, but not nonemployer individuals, may be held liable.").  Kane provides no argument or case law to the contrary.  *See generally* Oppo. Accordingly, his retaliation claim is DISMISSED with prejudice against Bernhard.

1

**CONCLUSION**

2      For these reasons, the motion to dismiss is GRANTED in part and DENIED in part, with

3   leave to amend.  Any amended complaint is due by January 10, 2023.

4      **IT IS SO ORDERED.**

5   Dated: December 12, 2022

6

7                                                    

8                                                    William H. Orrick
                                                     United States District Judge

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28